## Williams *versus* Getty.

31  461
129  587

31     461
d  26 SC ²146

The authority of a general agent to contract so as to bind his principal, is only limited to the usual and ordinary means of accomplishing the business intrusted to him.

If the principal holds out the agent to the world, as a general agent in the transaction of his business, any contract made by him, within the scope of that business, will bind the principal; although there may be, as between the principal and agent, a restriction upon the general authority of the latter; if the person with whom the contract is made have no notice of such restriction.

Persons dealing with an agent carrying on a general business, such as a general manager of a railroad contractor, are not bound to inquire into the particulars of the agent's authority, when held out to the world as a general agent.

[Williams *v.* Getty.]

ERROR to the Common Pleas of *Indiana county.*

This action was originally brought before a justice of the peace, by Robert Getty against David Williams, to recover for the breach of the defendant's contract to employ the plaintiff's team of horses and driver. The defendant appealed to the Common Pleas, from the judgment of the justice.

David Williams, the defendant, was a contractor on the Northwestern Railroad. During the year 1856, the work was carried on by John O'Leary, who acted as his general manager.

On the 5th May 1856, O'Leary made a contract with Getty, the plaintiff, for the labour of a two-horse team and driver, in the prosecution of the work, for a period of four to five months, at $3.50 per day. After working for 17½ days, O'Leary discharged the driver, without cause, paying him for the time he had worked. The team remained idle for 19½ days, before the plaintiff could find other employment for it. And this action was brought to recover damages sustained by reason of the defendant's breach of contract.

On the trial of the cause, the court below (BUFFINGTON, P. J.) charged the jury as follows:—

"If a man appoint an agent with general power to transact any business, the acts of the agent are the acts of the principal, in any matter within the terms of his authority; and if the principal holds the agent out to the world as a general agent in the transaction of his business, any contract he would make within the scope of that business would be binding on the principal, although there might be, as between the principal and agent, a restriction upon the general authority of the latter, and the person with whom the contract was made had no notice of such restriction. It is not to be expected, that persons dealing with an agent carrying on a general business, such as a general manager of a contractor on a railroad, would be bound to inquire the particulars of the agent's appointment and authority, when he is held out to the world as such general agent, particularly when the principal has been back and forward inspecting the progress of the work, and making no objection, nor giving any notice of the restricted authority of such agent. A different rule would enable the principal to affirm or deny at pleasure. If the contract was a favourable one, he could ratify it, and hold the other party liable; if unfavourable, he could repudiate it and escape from responsibility.

"In the present case, if the jury believe O'Leary was a general agent and manager, to manage and conduct the work, and employ hands, and he made a contract with the plaintiff to do work on the section for a specified time, and at a specified price, we think the contract a good one, and binding on the defendant.

"The question next to be considered is, was there a special contract? This is for the jury. If they believe there was, they

[Williams *v.* Getty.]

will then determine whether that contract was violated by the defendant, by discharging him before the expiration of the time specified by the contract. If so, the defendant would be liable for damages. The evidence shows that the team was out of employment in consequence of the discharge, some nineteen, or nineteen and a half days; when it was otherwise engaged. If the jury believe this, then the loss to the defendant would be the wages of the team agreed upon during that period.

"But, if there was no authority to the agent, or special contract, then the evidence shows that the plaintiff was paid for the work done, and the verdict should be for the defendant."

To this charge the defendant excepted; and a verdict and judgment having been given for the plaintiff for $75.41, the defendant sued out this writ, and here assigned the same for error.

*Foster & Stewart,* for the plaintiff in error.

*Wier & Thompson,* for the defendant in error.

The opinion of the court was delivered by

THOMPSON, J.—The learned judge of the court below charged, that "if the principal holds the agent out to the world as a general agent, in the transaction of his business, any contract he would make within the scope of that business would be binding on the principal, although there might be, as between the principal and agent, a restriction upon the general authority of the latter, if the person with whom the contract was made had no notice of such restriction." And that persons dealing with an agent carrying on a general business, such as a general manager of a railroad contractor, would not be bound to inquire into the particulars of the agent's authority, when held out to the world as such general agent, and particularly as the principal made no objections to his acts, and gave no notice of a restricted authority, although from time to time inspecting the progress of the work.

The plaintiff in error excepts to this, and assigns error upon it, on the ground, that as it had been the practice on that work to employ hands by the day, it was an excess of authority in the agent to employ the plaintiff below by the month. And this raises the question, whether the practice restricted the authority of the agent, or whether, being a general agent, he was within the scope of his authority in contracting for the usual and ordinary means of accomplishing the business. His business was to advance to completion the work under his care, and this was to be done by the employment of labourers and teamsters. This was apparent and palpable to all, and being so, it is difficult to conceive of any duty resting on a party about contracting to assist in the accomplishment of what the agent had power to do, namely, to construct

the portion of the road under his charge, other than to see that he was engaging to do what was usual in such business. The authority of a general agent to contract is implied in the nature and kind of business he has to do, and is only limited to the necessary and appropriate means of accomplishing it. If it were such a business as it was apparent would last but six months, a contract for a year doubtless would not be binding on the principal, because the party employed would be acting in bad faith, in undertaking when it was apparent he would not be needed; and besides, it would be equally apparent that such a contract was not necessary to the accomplishment of the object. So, if the business were such as would apparently last for months, an employment for one or more months would seem to all to be covered by the agent's implied authority, and would bind.

In *Addison on Contracts* 626, the point is treated distinctly and briefly thus: " A foreman intrusted with the general management of a trade or business, has an implied general authority from his employer to enter into all such contracts as are usually and necessarily entered into in the ordinary conduct and management of the business;" and he cites the case of Richardson *v.* Cartwright, 1 *Car. & Kirw.* 328, of a foreman of a saw-mill who took an order from the plaintiff for a large quantity of Scotch fir staves, and agreed to have them ready for delivery within a particular period; it was held, that his principal was responsible for the non-fulfilment of the contract, although no particular authority from the principal was shown to authorize the agent to make the contract. See also *Story on Agency*, §§ 55, 56, 87, 97 ; 2 *Kent's Com.* 793, *and note.*

A general power implies the grant of any matter necessary to its complete execution: Peck *v.* Harriott, 6 *S. & R.* 149; 17 *Ohio Rep.* 466. And in Scott *v.* Wells, 6 *W. & S.* 357, it was held, that a general agent to make sales was competent to rescind a contract of sale with the consent of the other party. The principle is elementary and uniform, that an implied general authority to transact business is only limited to the usual and ordinary means of accomplishing it. This doctrine is not to be confounded with that regulating special agents for limited purposes. There the extent of the authority must regulate the validity of the contract, and one who deals with such an agent must look to that.

We think the court was entirely accurate in that portion, of the charge embraced in the first and second specifications of error, and that the matter complained of in the third was but a corollary thereof and accurate of course. This judgment must be affirmed.

Judgment affirmed.