J-A18026-15

2015 PA Super 189

| | |
|---|---|
| H. RANDALL WISLER AND H. KEITH WISLER, CO-EXECUTORS OF THE ESTATE OF HERBERT C. WISLER, DECEASED<br><br>Appellees<br><br>v.<br><br>MANOR CARE OF LANCASTER PA, LLC D/B/A MANORCARE HEALTH SERVICES-LANCASTER, HCR MANOR CARE, INC., MANORCARE HEALTH SERVICES, INC., MANOR CARE, INC., HCR HEALTHCARE, LLC, HCR HEALTHCARE II, LLC, HCR HEALTHCARE III, LLC, AND HCR HEALTHCARE IV, LLC<br><br>Appellants | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1226 MDA 2014 |

Appeal from the Order entered June 27, 2014
In the Court of Common Pleas of Lancaster County
Civil Division at No: CI-12-09374

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MUSMANNO, JJ.

OPINION BY STABILE, J.:                    **FILED SEPTEMBER 08, 2015**

Appellants (collectively, ManorCare) appeal from an order sustaining in part and overruling in part their preliminary objections to the complaint of H. Randall and Keith Wisler (collectively, Executors), co-executors of the estate of Herbert C. Wisler (Decedent).  ManorCare contends the trial court erred in refusing to compel arbitration of Executors' claims arising out of Decedent's stay at a ManorCare nursing home.  The trial court found the arbitration agreement invalid, ruling that H. Randall Wisler, as power of

attorney for Decedent, lacked the authority to enter into such an agreement.

Upon review, we affirm.

> [Decedent] was a resident at [ManorCare Lancaster] from March 4, 2010 through April 28, 2010, and from August 13, 2010, through October 11, 2010. Thereafter, [Decedent] died on February 6, 2011. At the time of his [first] admission, [Decedent] required assistance with care for all of his activities of daily living. His medical history was significant for diabetes (type 2), chronic kidney disease, [p]acemaker, Orthostatis, coronary artery disease, multiple [cerebrovascular accidents, *i.e.*, strokes], Hyperlipidemia, depression, prostate and colon cancer, swallowing dysfunction, acute congestive heart failure, anemia[,] and protein calorie malnutrition.
>
> On March 4, 2010, the date of [D]ecedent's first admission to [ManorCare Lancaster], H. Randall Wisler, the [D]ecedent's son, co-executor, and co-plaintiff in this matter, signed [ManorCare Lancaster's] admission papers. On March 30, 2010, H. Randall Wisler further signed an [A]rbitration [A]greement as part of the admission process. This [A]greement provided that any disputes arising out of or in any way relating to the agreement or to [Decedent's] stay at [ManorCare Lancaster] "shall be submitted to binding arbitration."
>
> At the time of [D]ecedent's second admission on August 13, 2010, his son, H. Randall Wisler, again signed the admissions paperwork. Several days later, H. Randall Wisler was again asked to sign a second [A]rbitration [A]greement[1] on August 16, 2010.
>
> At all times relevant to the [D]ecedent's admissions to ManorCare, H. Randall Wisler had a power of attorney for his father. H. Randall Wisler advised ManorCare that he possessed his father's power of attorney. However, ManorCare did not

_____

[1] The first and second arbitration agreements are identical, except for the signature dates. For convenience, we will refer to the two agreements as if they were one.

obtain a copy of the power of attorney, nor could H. Randall Wisler produce a copy at the time of his deposition.

[Executors] were appointed executors of [Decedent's] estate on October 4, 2011, by the Register of Wills of Lancaster County. [Executors] filed a complaint on November 27, 2012, alleging that [ManorCare's] professional negligence and reckless conduct caused their [D]ecedent severe injuries during his two admissions at [ManorCare Lancaster]. Those injuries included numerous falls, poor skin care, urinary tract infections, malnutrition, dehydration, poor hygiene, and severe pain.

Trial Court 6/27/14, at 2-3 (internal record citations omitted). Executors bring their claims in their representative capacities as co-executors of Decedent's estate under the Survival Act. *See* 42 Pa.C.S.A. § 8302. Executors did not bring claims in their individual capacities as Decedent's sons under the Wrongful Death Act. *See id.* § 8301(b).

ManorCare filed preliminary objections to Executors' complaint, including a request to compel arbitration. The parties engaged in discovery relating to the enforceability of the Arbitration Agreement. After receiving briefs, the trial court entered an order sustaining in part and overruling in part ManorCare's preliminary objections. In relevant part, the trial court refused to compel arbitration, finding that H. Randall Wisler lacked authority to sign the Arbitration Agreements on Decedent's behalf. The trial court declined to consider other reasons Executors advanced in favor of refusing to compel arbitration. This appeal followed.[2]

---

[2] Though the order sustaining in part and overruling in part the preliminary objections is interlocutory, we have appellate jurisdiction over the order *vis-*
*(Footnote Continued Next Page)*

On appeal, ManorCare raises the following question for review:

Whether the trial court erred in concluding that the Appellee, H. Randall Wisler, did not have the authority to bind his father, [Decedent], to [ManorCare's] Arbitration Agreements where Appellees concede having a [p]ower of [a]ttorney, but have not produced the [p]ower of [a]ttorney document?

Appellants' Brief at 5.

Before we reach the merits, we must address Executors' claim that ManorCare waived appellate review by briefing deficiencies. Specifically, Executors claim ManorCare waived its argument by failing to comply with Pa.R.A.P. 2117(c),[3] which requires an appellant to state where and how it

_____

*(Footnote Continued)* ——————————

*à-vis* the refusal to compel arbitration, under the Uniform Arbitration Act, 42 Pa.C.S.A. § 7320, and Pa.R.A.P. 311(a)(8).

[3] Rule 2117(c), verbatim, reads:

**(c) Statement of place of raising or preservation of issues.** Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall also specify:

(1) The state of the proceedings in the court of first instance, and in any appellate court below, at which, and the manner in which, the questions sought to be reviewed were raised.

(2) The method of raising them (e.g. by a pleading, by a request to charge and exceptions, etc.).

(3) The way in which they were passed upon by the court.

(4) Such pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question

*(Footnote Continued Next Page)*

preserved the issues on appeal, and Pa.R.A.P. 2119(e),[4] which requires an appellant to provide cross-reference citations from its argument section to the statement of the case.

Executors' waiver argument is somewhat puzzling, because we find that ManorCare's brief clearly complies with the applicable briefing rules. ManorCare's brief sufficiently sets forth its manner and method of issue preservation—with citations to the reproduced record.  ***See*** Appellants' Brief at 6-7.  ManorCare's statement of the case also succinctly frames the chief issue on appeal as whether H. Randall Wisler had power of attorney to bind

*(Footnote Continued)* ──────────────

> was timely and properly raised below so as to preserve the question on appeal.

> Where the portions of the record relied upon under this subdivision are voluminous, they shall be included in an appendix to the brief, which may, if more convenient, be separately presented.

Pa.R.A.P. 2117(c).

[4] Rule 2119(e) provides:

> (**e) Statement of place of raising or preservation of issues.** Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross reference to the page or pages of the statement of the case which set forth the information relating thereto required pursuant to Rule 2117(c) (statement of place of raising or preservation of issues), or substantially the same information.

Pa.R.A.P. 2119(e).

Decedent to arbitration. ***See id.*** at 8-9. Further, ManorCare's argument section complies with Rule 2119(e), because it has cross-references to the statement of the case. ***See id.*** at 15-17, 26.

Additionally, waiver, and therefore dismissal of an appeal, for briefing defects is discretionary. ***See*** Pa.R.A.P. 2101. Even if ManorCare's brief were non-compliant, we would not impose such a harsh remedy, especially given that none of Executors' cited cases supports their waiver proposition. ***Commonwealth v. Wholaver***, 903 A.2d 1178, 1183-84 (Pa. 2006), concerns mandatory waiver under Rule 1925, not prudential waiver for briefing deficiencies under Rule 2101. ***Compare id.*** (quotation omitted) (noting the "bright-line rule" that an appellant who fails to comply with Rule 1925 waives review), ***and*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."), ***with*** Pa.R.A.P. 2101 (providing that a deficient brief "**may** be suppressed" and an appeal "**may** be dismissed" for substantial defects) (emphases added). Executors' two cited Commonwealth Court decisions are wholly unpersuasive, because they concern waiver for failure to raise issues before administrative agencies, and the accompanying discussions of Rule 2117 are *dicta*. ***See McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)***, 903 A.2d 94, 101-02 (Pa. Cmwlth. 2006) (dismissing petition for review under Rule 1551 because petitioner failed to raise issue before the Board); ***Jonathan Sheppard Stables v. Workers' Comp. Appeal Bd. (Wyatt)***, 739 A.2d 1084, 1089-90 & n.6 (Pa. Cmwlth.

1999) (refusing to consider some appellate issues under Rule 1551 because petitioner did not raise them before the Board).

Finally, it is disingenuous for Executors to raise ManorCare's alleged briefing defects given that their brief violates Rule 2117(b), which prohibits argument in the statement of the case.[5]  ***See*** Appellees' Brief at 6-7 (characterizing the Arbitration Agreement as "grossly one-sided—and fatally flawed"); ***id.*** at 14 (criticizing ManorCare for not following its standard admissions procedures in this case); ***id.*** at 17 (accusing ManorCare of "routinely depriv[ing] signatories of even a basic understanding of [its] Arbitration Agreement"); ***id.*** at 18 ("There are Many Problems with the Arbitration Agreement[.]"); ***id.*** at 24 n.14 (charging ManorCare with violating the covenant of good faith and fair dealing).  It is difficult to distinguish Executors' factual recitation from its argument. In sum, we reject Executors' waiver argument.

We proceed now to the merits of ManorCare's argument.  On appeal from an order refusing to compel arbitration, our standard of review is as follows:

---

[5] Executors contend that we must view all evidence in a light most favorable to them as the party opposing arbitration. ***See*** Appellees' Brief at 5 n.2 (citing ***Bellman v. i3Carbon, LLC***, 563 F. App'x 608, 612 (10th Cir. 2014)). It is beyond peradventure that the United States Court of Appeals for the Tenth Circuit does not—and cannot—set forth the standard of review that applies in this Court.

Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.

**Walton v. Johnson**, 66 A.3d 782, 787 (Pa. Super. 2013) (quoting **Gaffer**[ **Ins. Co., Ltd. v. Discover Reins. Co.**], 936 A.2d [1109,] 1112 [(Pa. Super. 2007)]). "In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration." **Elwyn**[ **v. Deluca**], 48 A.3d [457,] 461 [(Pa. Super. 2012)] (quoting **Smay v. E.R. Stuebner, Inc.**, 864 A.2d 1266, 1270 (Pa. Super. 2004)). First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

**Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651, 654-55 (Pa. Super. 2013). Our scope of review is plenary. **McNulty v. H&R Block, Inc.**, 843 A.2d 1267, 1269 (Pa. Super. 2004), *abrogated on other grounds by*, **AT&T Mobility, LLC v. Concepcion**, 131 S. Ct. 1740 (2011).

This appeal concerns solely the validity of the Arbitration Agreement, *i.e.*, the first part of the two-part test. ManorCare contends that H. Randall Wisler had the legal authority to sign the Arbitration Agreement on Decedent's behalf. It also argues that the trial court erred in failing to recognize an unfavorable inference against Executors because they did not produce the written power of attorney. Finally, ManorCare argues that the Arbitration Agreement does not unlawfully deprive Decedent of his constitutional right to trial by jury.

Executors respond that ManorCare failed to establish that H. Randall Wisler had authority to execute the Arbitration Agreement for Decedent.

They provide alternative arguments in favor of affirmance. Executors contend the Arbitration Agreement is unconscionable. They also argue it is unenforceable, because the Arbitration Agreement provides that it is governed by the code of the National Arbitration Forum (NAF), which no longer performs such arbitrations.[6]

"[A] party 'can be compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common-law principles of agency and contract support such an obligation on his or her part.'" *Array Healthcare Facilities Solutions, Inc. v. Pesce*, 2 Pa. D. & C.5th 547, 566 (C.P. Phila. 2006) (quoting *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004)), *aff'd*, 931 A.2d 60 (Pa. Super. 2007) (unpublished memorandum). Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so. *See Basile v. H&R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000). "An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel." *Walton*, 66 A.3d at 786. Agency cannot be inferred from mere

---

[6] In *Stewart v. GGNSC-Canonsburg, LP*, 9 A.3d 215, 222 (Pa. Super. 2010), we invalidated a pre-dispute nursing home arbitration agreement because of the NAF's unavailability. Our Supreme Court is currently considering whether to overrule or reaffirm *Stewart*. *See Wert v. ManorCare of Carlisle, PA, LLC*, 95 A.3d 268, 268-69 (Pa. 2014) (*per curiam* order granting allowance of appeal).

relationships or family ties, and we do not assume agency merely because one person acts on behalf of another. *Id.* at 787 (quoting *Sidle v. Kaufman*, 29 A.2d 77, 81 (Pa. 1942)). Rather, we look to facts to determine whether the principal expressly or impliedly intended to create an agency relationship. *Id.* To that end, family ties may be relevant when considered with other factors evincing agency. *Sidel*, 29 A.2d at 81. Finally, the party asserting the agency relationship bears the burden of proving it by a preponderance of the evidence. *Walton*, 66 A.3d at 786.

"Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters." *Walton*, 66 A.3d at 786 (citing *Bolus v. United Penn Bank*, 525 A.2d 1215 (Pa. Super. 1987)). An agent with express authority also acquires implied authority, which "exists in situations where the agent's actions are 'proper, usual and necessary' to carry out express agency." *Id.* (quoting *Passarelli v. Shields*, 156 A.2d 343, 347 (Pa. Super. 1959)). A valid, durable power of attorney constitutes a grant of express authority per its terms. *See* 20 Pa.C.S.A. § 5601(a).

A party who deals with an agent must "take notice of the nature and extent of the authority conferred. Parties are bound at their own peril to notice limitations upon the grant of authority before them, whether such limitations are prescribed by the grant's own terms or by construction of law." *Fierst v. Cmwlth. Land Title Ins. Co.*, 451 A.2d 674, 677 (Pa. 1982). "If a person dealing with an agent has notice that the agent's

authority is created or described in a writing which is intended for his inspection, he is affected by limitations upon the authority contained in the writing, unless misled by conduct of the principal." Restatement (Second) of Agency § 167 (1958).

We hold the trial court did not err in finding that H. Randall Wisler lacked express authority to sign the Arbitration Agreement on Decedent's behalf. As noted by the trial court, ManorCare had a duty to ascertain the nature and extent of the written power of attorney. *See* Trial Court Opinion, 6/27/14, at 10-11 (internal citations omitted). The law required ManorCare to determine the extent of H. Randall Wisler's purported authority as Decedent's agent at the time of reliance. ManorCare failed to do so at its peril.

Additionally, to the extent that the power of attorney granted H. Randall Wisler the ability to sign admissions paperwork for Decedent, nothing indicates that it also allowed him to waive litigation rights in favor of arbitration. As the trial court noted, the authority to consent to medical treatment and care on behalf of a principal does not necessarily entail the authority to consent to arbitration, agreement to which was not a precondition to be admitted to ManorCare Lancaster. *See id.* at 9 & n.1.

*Northern Health Facilities v. Batz*, 993 F.Supp.2d 485 (M.D. Pa. 2014), cited by ManorCare, is distinguishable. In that case, the patient admitted to the nursing home was blind, he was present during the intake interview, and he told the intake nurse that his wife, who was also present,

could sign the admissions paperwork on his behalf. *Id.* at 489-90. Moreover, these facts were undisputed during litigation. *Id.* Here, there is no clear, express grant of authority from Decedent to H. Randall Wisler. Nor do Executors stipulate to the facts supporting agency. Additionally, we have refused to rely on *Batz*'s ultimate holding, because the *Batz* court did not rely on Pennsylvania law. *See Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317, 327 (Pa. Super. 2015).

We next consider whether H. Randall Wisler had apparent authority to sign the Arbitration Agreement. "Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act." *Walton*, 66 A.3d at 786 (citing *Turner Hydraulics v. Susquehanna Constr. Co.*, 606 A.2d 532 (Pa. Super. 1992)). "An agent cannot simply by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent." *Id.* at 787 (quotation omitted).

The trial court did not abuse its discretion in concluding that ManorCare failed to prove H. Randall Wisler acted under apparent authority in signing the Arbitration Agreement. We adopt the trial court's cogent analysis:

> There is no evidence presented of any manifestation by the [D]ecedent to [ManorCare Lancaster] that his son was authorized to act on his behalf in signing the [A]rbitration [A]greements. Indeed, [ManorCare's] argument focuses on the actions of the son, the purported agent, in attempting to

> establish apparent authority. [ManorCare's] contention that, in deposition testimony three years after the fact, H. Randall Wisler "conceded that he had [the] authority" to sign the admissions paperwork and that he "noted various other examples of having acted on behalf of his father pursuant to his [power of attorney], such as being involved in previous hospital admissions, doing his banking, and paying his bills" is meritless. Again, authority emanates from the principal's action[,] and not the agent's. Thus, even if H. Randall Wisler did inform staff at [ManorCare Lancaster] that he had a power of attorney for his father and that he had the authority to sign documents on his father's behalf, no[ ]one obtained a copy of the power of attorney or confirmed with Decedent whether [H. Randall] Wisler, in fact, had such authority and if it extended to signing a waiver of his constitutional right to a jury trial. [ManorCare] can point to no word or action by the purported principal that led [it] to believe that [Decedent] had granted [H. Randall Wisler] the authority to sign **any** papers on his behalf.

> Here, the [D]ecedent was not present during the admission process, and [ManorCare Lancaster's] admissions coordinator, Shawn Kroeck, has no recollection of the [D]ecedent's admission and, thus, can offer no testimony of any alleged agency relationship created between the [D]ecedent and his son, H. Randall Wisler, upon which Mr. Kroeck relied when presenting the admissions paperwork and the arbitration agreements at issue.

Trial Court Opinion, 6/27/14, at 10-11 (internal citations omitted) (emphasis added).

We also reject as unavailing ManorCare's argument in favor of authority by estoppel. "Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of [his or her belief] that the purported agent was authorized to act on behalf of the principal." **Walton**, 66 A.3d at 786 (citing **Turnway Corp. v. Soffer**, 336 A.2d 871 (Pa. 1975)). Again, we adopt the trial court's analysis:

There is no authority by estoppel[,] because [ManorCare] offered no evidence the [D]ecedent was negligent in failing to take reasonable steps to disavow [ManorCare Lancaster] of its belief that H. Randall Wisler was authorized to act on his behalf. [ManorCare] offered no evidence showing the [D]ecedent knew of the [A]rbitration [A]greement[], authorized his son to sign the [A]greement[], or otherwise agreed to arbitrate any disputes with [ManorCare Lancaster].

The [D]ecedent was not even present during the admission process; thus, [ManorCare] offered no evidence whatsoever of the [D]ecedent's conduct when the agreements were executed. Nor did [ManorCare] offer any evidence of the [D]ecedent's condition at [ManorCare Lancaster] after the [A]greements were signed by his son. [ManorCare Lancaster] neither presented the [A]rbitration [A]greement[] to the [D]ecedent at a later time for his ratification[,] nor did it provide him with copies of the [A]greements signed by his son.

Trial Court Opinion, 6/27/14, at 11-12.

ManorCare argues that H. Randall Wisler admitted his authority as agent at his deposition, and that "admission" is dispositive. **See** Appellants' Brief at 16 (citing Pa.R.E. 803(25)). This argument begs the question, because ManorCare assumes that H. Randall Wisler's testimony is controlling as an admission. We fail to see how Pa.R.E. 803(25) applies here.[7]

_____

[7] Rule 803(25) provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

\* \* \*

**(25) An Opposing Party's Statement.** The statement is offered against an opposing party and:

(A) was made by the party in an individual or representative capacity;

*(Footnote Continued Next Page)*

- 14 -

Executors do not argue that that H. Randall Wisler's testimony is inadmissible hearsay. ManorCare fails to address how the actions of H. Randall Wisler—the purported agent—bind Decedent—the purported principal. "An agent cannot simply, by his or her own words, invest himself or herself with apparent authority; but rather, such authority emanates from the principal's action and not the agent's." **V-Tech Servs., Inc. v. Street**, 72 A.3d 270, 279 (Pa. Super. 2013) (citing **Turnway Corp. v. Soffer**, 336 A.2d 871 (Pa. 1975)) (emphasis added).

We reject ManorCare's intentional spoliation and adverse-inference arguments as non-sequiturs.[8] ManorCare does not argue for a permissive adverse inference. Rather it contends the trial court should have **concluded**—from the absence of evidence—that ManorCare met its burden

_(Footnote Continued)_ —————————————

> (B) is one the party manifested that it adopted or believed to be true;
>
> (C) was made by a person whom the party authorized to make a statement on the subject;
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Pa.R.E. 803(25).

[8] Executors incorrectly contend ManorCare failed to raise this argument before the trial court. ManorCare did so in it supplemental brief in support of its preliminary objections.

of proof. *See* Appellants' Brief at 22 (arguing that the trial court should have concluded that the power of attorney would have authorized H. Randall Wisler to execute the Arbitration Agreement). Additionally, ManorCare incorrectly characterizes its proposed adverse inference as mandatory. *See id.* at 10, 22.

Adverse inferences are merely permissive. "The failure to produce evidence raises a permissible inference, not a mandatory inference or a presumption." 1 PACKEL & POULIN ON PENNSYLVANIA EVIDENCE § 427 (4th ed. 2014). As our Supreme Court long ago stated:

> Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact, not a presumption of law.

*Hall v. Vanderpool*, 26 A. 1069, 1071 (Pa. 1893); *see also* Pa. Sugg. Stand. Jury Instr. (Civ.) §§ 5.30, 5.60 (stating that the jury may take inference against a party who failed to produce, or intentionally withheld, relevant evidence); BINDER ON PENNSYLVANIA EVIDENCE § 3.18 (8th ed. 2014) ("The adverse presumption (inference) resulting from . . . spoliation of evidence shifts neither the burden of production, nor the burden of persuasion, on the issue of liability to be resolved by the trier of fact."). In other words, adverse inferences are not evidence. *See Kennett Square Specialties v. Workers' Comp. Appeal Bd. (Cruz)*, 31 A.3d 325, 328-29 (Pa. Cmwlth. 2011) ("The reason that an adverse inference cannot serve as substantial evidence to support a finding of fact is because an adverse

inference does not constitute evidence, period."), *aff'd*, 99 A.3d 397 (Pa. 2014). Here, ManorCare would have a court conclude—from the absence of evidence—that it met its burden of proving that H. Randall Wisler had the authority to sign the Arbitration Agreement for Decedent. Understandably, we decline to find trial court error on this basis.

ManorCare further contends that not taking an adverse inference sets a dangerous precedent by encouraging litigants not to cooperate in discovery,[9] or to destroy valid powers of attorney to escape contractual obligations. We disagree. If a third party relies on an agent's authority, it must ascertain the scope of that authority at the time of reliance. **See** **Fierst**, 451 A.2d at 677; Restatement (Second) of Agency § 167 (1958). The third party that fails to do so acts at its own peril. In other words, our decision should encourage parties seeking an agreement to arbitrate to ascertain the source of an agent's authority before allowing the agent to sign an arbitration agreement on the principal's behalf.

---

[9] ManorCare never filed a motion to compel production of the power of attorney and, consequently, never sought discovery sanctions. **Cf.** Pa.R.C.P. No. 4019(a)(1)(vii). Although it apparently requested H. Randall Wisler to bring with him a copy of the power of attorney to his deposition under Rule 4007.1(d)(1), it did not explore in detail what happened to the power of attorney. **See** Defendants' Supplemental Memorandum of Law in Support of Preliminary Objections of Defendants to Plaintiffs' Complaint, 6/13/13, Exhibit B, Deposition of H. Randall Wisler, 5/23/13, at 14-17.

We hold the trial court did not err in refusing to compel arbitration. Therefore, we need not consider alternative grounds in favor of affirmance. The order overruling ManorCare's request to compel arbitration is affirmed.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2015